UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRIENDS OF ANIMALS,**<br><br>    Plaintiff,<br><br>        v.<br><br>**DANIEL M. ASHE, in his official capacity as Director of the United States Fish & Wildlife Service, et al.,**<br><br>    Defendants. | Civil Action No. 13-1607 (JDB) |

## MEMORANDUM OPINION

Plaintiff Friends of Animals ("FOA") brings this action against defendants Daniel M. Ashe (in his official capacity as Director of the United States Fish & Wildlife Service) and Sally Jewell (in her official capacity as Secretary of the Interior) (collectively, "FWS" or "the Secretary"). FOA alleges that FWS failed to make timely determinations on citizen petitions to list thirty-nine species as either endangered or threatened under the Endangered Species Act. Before the Court is [12] FWS's motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the reasons set forth below, the Court will grant the motion and dismiss FOA's complaint.

## BACKGROUND

**I. Statutory And Regulatory Background**

The Endangered Species Act ("ESA") charges the Secretary of the Interior with the responsibility of classifying animal or plant species as "endangered" or "threatened." 16 U.S.C. § 1533(a). The Secretary of the Interior has delegated this authority to the Fish & Wildlife

Service. 50 C.F.R. § 402.01(b). In making these "listing" determinations, FWS is obligated by statute to follow certain procedures. 16 U.S.C. § 1533(b). As relevant here, "[e]mbracing citizen participation in the listing process, Congress has afforded any 'interested person' the opportunity to petition [FWS] to list a species." Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002); see also 16 U.S.C. § 1533(b)(3).

Upon receipt of such a "citizen petition," FWS is subject to a series of statutory deadlines of varying flexibility. From the filing date, FWS has 90 days to make an initial determination "whether the petition presents substantial . . . information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). FWS, however, is obligated to meet this 90-day deadline only "[t]o the maximum extent practicable," id.—a grant of statutory flexibility that it takes advantage of on a regular basis. See In re Endangered Species Act Section 4 Deadline Litig., MDL No. 2165, 716 F. Supp. 2d 1369 (J.P.M.L. 2010).

This initial determination—called a "90-day finding"—may be positive or negative. A "negative" 90-day finding—that is, when FWS determines that the petition does not "present[] . . . substantial information" suggesting that listing the species "may be warranted"—ends the listing process for that citizen petition. See 16 U.S.C. § 1533(b)(3)(A)-(B). If FWS makes a "positive" 90-day finding—that is, it finds that the petition does present the requisite "substantial information" suggesting that listing the species "may be warranted"—the listing process continues. In that case, a separate duty is triggered to undertake a "status review" of the species named in the petition, and, within 12 months, issue the (aptly named) "12-month finding." Id. § 1533(b)(3)(B). This 12-month deadline is calculated from the filing date of the citizen petition—not from the date of the 90-day finding. See Badgley, 309 F.3d at 1176. Unlike the 90-day deadline, which is binding on FWS only "[t]o the maximum extent practicable," 16

U.S.C. § 1533(b)(3)(A), the 12-month deadline is mandatory and inflexible. See Badgley, 309 F.3d at 1176. Nevertheless, as a practical matter, FWS frequently misses the mandatory deadline for 12-month findings. See Section 4 Deadline Litig., 716 F. Supp. 2d at 1369.

The ESA provides for three possible 12-month findings: (1) that the petitioned action is "warranted"; (2) that the petitioned action is "not warranted"; or (3) that the petitioned action is "warranted but precluded," meaning that it is a lower priority than other pending listing proposals. 16 U.S.C. § 1533(b)(3)(B). A 12-month finding of "warranted"—that is, a "positive" 12-month finding—requires publication in the Federal Register of a notice of proposed rulemaking to implement the petitioned listing action. Id. § 1533(b)(3)(B)(ii). A 12-month finding of "warranted but precluded" requires publication in the Federal Register of some explanation to justify FWS's decision. Id. § 1533(b)(3)(B)(iii). And a 12-month finding of "not warranted"—that is, a "negative" 12-month finding—ends the listing process for that petition.

FWS's failure to comply with the 90-day or 12-month deadlines in the listing process is judicially reviewable. See id. § 1540(g)(1)(C) (allowing a civil suit "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary"). Before filing suit, however, a potential plaintiff must comply with the ESA's "notice and delay" provision. The provision provides that "[n]o action may be commenced under subparagraph (1)(C) of this section prior to sixty days after written notice has been given to the Secretary" of the alleged violation. See id. § 1540(g)(2)(C).

## II. Factual And Procedural Background

Friends of Animals is a non-profit organization that "seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living

and domestic animals." Compl. [ECF No. 1] ¶ 5. In support of this mission, between October 2010 and March 2012, FOA (and its allies) filed a series of citizen petitions, calling on FWS to list thirty-nine different animal species worldwide as either endangered or threatened: ten species of sturgeon, id. ¶¶ 22-23, eleven species of tarantula, id. ¶ 27, fifteen species of bat, id. ¶ 31, the ridgeway hawk, id. ¶ 35, the Virgin Islands coqui (a type of frog), id. ¶ 39, and the Flores hawk-eagle, id. ¶ 43.

For years, FWS issued no response to any of these petitions. The most recently submitted petition was for the ten sturgeon species: FOA filed those petitions on March 8, 2012. Id. ¶ 22. Therefore, as of June 6, 2012—90 days later—FWS had missed the deadline for all thirty-nine of the requisite 90-day findings. Nevertheless, FOA—perhaps in acknowledgment that the 90-day deadline was only mandatory "[t]o the maximum extent practicable," 16 U.S.C. § 1533(b)(3)(A)—let its petitions sit for over a full year more.

As of August 16, 2013, FWS still had not made 90-day findings for any of the thirty-nine petitions, some of which had been filed nearly three years earlier. On that day, FOA sent a "Notice of Intent to Sue" letter to FWS and the Department of the Interior. See Ex. A to Compl. ("Notice of Intent") at 1. The letter purported to notify FWS that it was "in violation of the [ESA] by failing to take action . . . concerning petitions to list 39 species . . . as 'threatened' or 'endangered' under the ESA." Id. at 1.

In the letter, FOA detailed its objections to FWS's failure to act with respect to each species. First, FOA explained that FWS must make a 90-day finding, "to the maximum extent practicable, within 90 days of receiving a petition." Id. at 2. FOA then continued, pointing out that "ESA subsection 4(b)(3)(B) requires the Secretary to complete a status review and publish a finding, within 12 months of receiving a petition that has received a positive 90-day finding, as

4

to whether a species warrants listing, warrants listing but is precluded due to higher priorities, or does not warrant listing." Id. FOA clarified that "both initial 90-day petition finding[s] and 12-month listing determination[s] must be made within 12 months of the date on which the petition is received." Id. (citing Badgley, 309 F.3d at 1176). Finally, with respect to all 39 species, FOA explained that both "the 90-day petition finding and 12-month listing determinations" were past due, and that, therefore, "the Secretary is in violation of subsection[s] 4(b)(3)(A) and 4(b)(3)(B)." Id.

Just over a month later, FWS made a "positive" 90-day finding for all ten species of sturgeon appearing in FWS's petitions. See Compl. ¶ 25; 78 Fed. Reg. 58,507 (Sept. 24, 2013) ("[W]e determine that the petition presents substantial scientific or commercial information indicating that listing these 10 sturgeon species as endangered or threatened may be warranted.").

On October 21, 2013—after the 60-day delay window had passed since FOA's notice letter—FOA filed this suit. At that time, more than a year had passed since the filing date of all thirty-nine petitions, but FWS had not made any 12-month findings. Compl. ¶ 49. And other than with respect to the 10 sturgeon species subject to the positive 90-day findings that September, FWS had not made any other 90-day findings—positive or negative. Id. ¶¶ 25, 29, 33, 37, 41, 45. Thereafter, on December 3, 2013, FWS made positive 90-day findings for all eleven tarantula species in FOA's petitions. See 78 Fed. Reg. 72,622 (Dec. 3, 2013).

On December 30, 2013, FWS filed a motion to dismiss FOA's complaint for lack of subject-matter jurisdiction, arguing (1) that FOA had not suffered an injury in fact sufficient to confer Article III standing, and (2) that FOA's 60-day notice letter was defective. Defs.' Mot. to Dismiss [ECF No. 12] ("Defs.' Mot"). FWS also moved to dismiss for failure to state a claim with respect to the eighteen species for which FWS had not yet made a 90-day determination,

arguing that there could be no mandatory duty to issue a 12-month finding before positive 90-day findings had been issued. Id. at 31.

On January 22, 2014, FWS issued positive 90-day findings for the remaining eighteen species in FOA's petitions (fifteen bat species, the Ridgeway hawk, the Virgin Islands coqui, and the Flores hawk-eagle). See 79 Fed. Reg. 3,559 (Jan. 22, 2014). FWS filed a notice with the Court updating the factual record and withdrawing its Rule 12(b)(6) argument with respect to these eighteen species. See Defs.' Notice of Publication [ECF No. 18]. As FWS (implicitly) acknowledged, because it had now issued positive 90-day findings with respect to all thirty-nine species in the petitions at issue, it was now under a mandatory duty to issue 12-month findings for all of those species. Id. at 2. At that point—and to this day—FWS had not issued the required 12-month findings. FWS maintains that its subject-matter jurisdiction arguments were unaffected by this development. Id.

## **LEGAL STANDARD**

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that the Court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (omission in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See, e.g., Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005); Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 n.3 (D.C. Cir. 1997).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

## DISCUSSION

The bulk of the parties' briefing is directed to the question whether FOA has properly alleged an injury-in-fact that would confer standing under Article III of the United States Constitution. That question is difficult, and both parties marshal precedent in support of their theories of how Article III's standing requirement applies to these facts. But "it is a well-established principle governing the prudent exercise of [a court's] jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." Nw. Austin Mun. Util. Dist. No. 1 v. Holder, 557 U.S. 193, 205 (2009) (internal quotation marks omitted). And an alternate ground is present here: FOA's failure to provide adequate notice of a statutory violation before bringing suit. For the reasons set forth below, this threshold defect in FOA's complaint requires dismissal and, hence, the Court need not reach the standing issue.

**I. The ESA's 60-Day Notice Requirement Is Mandatory And Strictly Construed.**

The ESA provides a private cause of action "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title"—that is, the ESA's "listing" provisions for endangered species—"which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). This statutory grant is limited, however, by a "notice and delay" requirement: "No action may be commenced under subparagraph (1)(C) of this section prior to sixty days after written notice has been given to the Secretary." Id. § 1540(g)(2)(C). This notice requirement is mandatory, and failure to fastidiously comply with it

requires dismissal.  See, e.g., Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998) ("A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA.").  This proposition has been non-controversial since the Supreme Court's decision in Hallstrom v. Tillamook County, 493 U.S. 20 (1989).

In Hallstrom, the plaintiffs asked the Court to adopt a "flexible or pragmatic construction" of a nearly identical notice provision in another environmental statute.[1]  Id. at 26.  The Court declined, holding that "[u]nder a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit."  Id.  Because "Congress could have excepted parties from complying with the notice or delay requirement," but chose not to, the Court held that it was "not at liberty to create an exception where Congress has declined to do so."  Id. at 26-27.

In response to the argument that it was inequitable to dismiss a lawsuit on such technical grounds, the Supreme Court noted that, "[u]nlike a statute of limitations, RCRA's 60-day notice provision is not triggered by the violation," but rather, plaintiffs "have full control over the timing of their suit: they need only give notice to the appropriate parties and refrain from commencing their action for at least 60 days."  Id. at 27.  For that reason, the Court held that "[t]he equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by petitioners' failure to take the minimal steps necessary to preserve their claims."  Id. (internal quotation marks omitted).  The Court continued, noting that environmental citizen suits are "generally filed by trained lawyers who are presumed to be aware of statutory

---

[1] Hallstrom interpreted the 60-day notice provision in the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972(b) ("RCRA").  Due to the nearly identical statutory language and structure, courts have consistently applied Hallstrom's teachings to notice defects in ESA citizen suits.  See, e.g., Bldg. Indus. Ass'n of S. Cal., Inc. v. Lujan, 785 F. Supp. 1020, 1021 (D.D.C. 1992) ("The ESA provision here is indistinguishable from the one in Hallstrom."); see also Hallstrom, 493 U.S. at 23 n.1 (listing several environmental statutes, including the ESA, which have notice provisions similar to the one in RCRA).

requirements," and "[u]nder these circumstances, it is not unfair to require strict compliance with statutory conditions precedent to suit." Id. at 28. Finally, to extinguish any lingering doubt as to whether district courts had discretion to excuse imperfect compliance with these notice provisions, the Supreme Court concluded as follows: "[W]e hold that the notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion." Id. at 31.

Unsurprisingly, lower courts have given effect to Hallstrom's clarity on this point by consistently dismissing ESA citizen suits for failure to strictly comply with the 60-day notice and delay provision in 16 U.S.C. § 1540(g)(2)(C). See, e.g. Research Air, Inc. v. Norton, 2006 WL 508341, at *10 (D.D.C. Mar. 1, 2006) ("[T]he Court cannot flexibly construe the statute to permit it to be satisfied by notice to an AUSA, rather than notice given directly to the Secretary or the violator.") (citing Hallstrom, 493 U.S. at 26); Common Sense Salmon Recovery v. Evans, 329 F. Supp. 2d 96, 104 (D.D.C. 2004) (dismissing claims not specifically mentioned in plaintiff's (otherwise timely) notice letter); Building Industry, 785 F. Supp. at 1021 (rejecting plaintiff's "constructive notice argument" as "unpersuasive," and holding that "the statutory provisions and the reasoning in Hallstrom require dismissal").

One particularly common pitfall is providing "pre-violation notice," that is, when a plaintiff gives notice of an impending violation of the ESA—but before that violation has actually occurred. Courts dismiss on this ground, finding that pre-violation notice is inadequate under the statute (and Hallstrom's strict interpretive approach). See, e.g., Moden v. U.S. Fish & Wildlife Service, 281 F. Supp. 2d 1193, 1206 (D. Or. 2003) ("[A]t the time plaintiffs provided defendants with notice, the agency had not considered the petition to delist. Therefore, because the agency had not acted on the petition at the time of notice, plaintiffs could not have given the

Secretary notice of an unlawful action."); Kern Cnty. Farm Bureau v. Badgley, 2002 WL 34236869, at *13 (E.D. Cal. Oct. 10, 2002) ("[T]he fact that a premature notice forecasts a violation that actually appears in a final rule promulgated by the Secretary does not change the fact that one cannot give notice of a violation which has not yet happened."); see also Friends of Animals v. Salazar, 670 F. Supp. 2d 7, 13 (D.D.C. 2009) ("When FOA provided its original [notice letter], however, Defendants had not yet missed the deadline for the twelve-month finding.  Thus, admittedly and understandably, Plaintiff did not notify Defendants of its intent to sue for that particular statutory violation. . . . FOA's failure to provide sixty-days' notice prior to bringing its claims with respect to the 12-month finding means those claims must be dismissed."); accord Conservation Force v. Salazar, 715 F. Supp. 2d 99, 103-04 (D.D.C. 2010).

## II.  FOA's "Pre-Violation" Notice Was Defective.

FOA's notice letter (attached as an exhibit to the complaint) is dated August 16, 2013. Notice of Intent at 1.  As of that date, although every one of the thirty-nine listing petitions had already been pending for more than one year, FWS had made no statutory findings: it had made no 90-day findings, nor any 12-month findings.  See generally Notice of Intent.  So FOA issued the following warning to FWS: "If you do not promptly issue the overdue 90-day findings and 12-month listing determinations described above, Friends of Animals intends to file suit to require that you do so."  Id. at 7.

When it came time to actually file this lawsuit, however, FOA followed through on this threat only in part.  Specifically, it challenged only FWS's failure to make the thirty-nine 12-month findings.  See Compl. ¶ 49 ("The Secretary failed to make a finding indicating whether the petitioned actions were warranted within 12 months after receiving petitions to list the thirty-nine (39) Petitioned Species as 'threatened' or 'endangered' under the ESA."); Compl. Prayer for

Relief ¶ 1 (seeking a declaration that "the Secretary has violated the ESA by not issuing 12-month findings"). Although FOA mentioned the overdue 90-day findings as relevant factual background in support of its 12-month claims, it made no allegation that FWS actually violated the ESA by its failure to make the requisite 90-day findings. This was likely an intentional and strategic decision: although the 12-month deadline is mandatory and inflexible, see Badgley, 309 F.3d at 1175-76, the 90-day deadline is applicable only "to the maximum extent practicable," 16 U.S.C. § 1533(b)(3)(A). In any event, whatever the reason, only the alleged violation of FWS's mandatory duty to issue 12-month findings is at issue in this case.[2] The next question, then, is whether FOA provided adequate notice of the asserted 12-month violations before filing suit. Unfortunately for FOA, it did not.

On August 16, 2013—the date of the notice letter—FWS had issued no 90-day findings and no 12-month findings. See generally Notice of Intent. Therefore, on that date, FWS may have been in violation of the 90-day deadlines for all thirty-nine petitions (a question not presented here, but one that would turn on whether FWS could demonstrate that meeting the 90-day deadline was not "practicable," see 16 U.S.C. § 1533(b)(3)(A)).

But, due to its failure to issue any 90-day findings, FWS was not yet in violation of any of the 12-month deadlines. The reason is simple: a duty to issue a 12-month finding is only triggered by a positive 90-day finding. See, e.g., Conservation Force, 715 F. Supp. 2d at 103-04 (holding that a "12-month finding [is] required only where [a] 90-day finding concludes that a

---

[2] In an effort to avoid dismissal, FOA asserts in its opposition brief that it also "alleged violations of the ESA for failure to make the required 90-day findings." Pl.'s Opp'n [ECF No. 15] at 22. This is inaccurate. A fair reading of the complaint makes clear that, although FOA did cite FWS's failure to make 90-day findings as relevant factual background, it challenged only FWS's failure to make 12-month findings as unlawful under the statute. See, e.g., Compl. ¶ 49. And "a complaint may not be amended by the briefs in opposition to a motion to dismiss." McManus v. District of Columbia, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) (internal quotation marks omitted). Of course, had FOA brought such claims, they would now be moot: FWS has now issued positive 90-day findings for all thirty-nine species.

petition 'presents substantial information indicating that the petitioned action may be warranted,'" and that, until that time, "the need for a 12-month finding remained speculative") (quoting 16 U.S.C. § 1533(b)(3)(A)). And a "positive" 90-day finding is only one of two possible outcomes at that stage—a "negative" 90-day finding results in the end of the listing process for that petition. See 16 U.S.C. § 1533(b)(3)(A)-(B); accord Compl. ¶ 14 ("If the Secretary finds that the petition does not present substantial information indicating that the listing may be warranted, the petition is rejected and the process ends."). Indeed, FOA's notice letter explicitly acknowledges this feature of the regulatory scheme: "ESA subsection 4(b)(3)(B) requires the Secretary to complete a status review and publish a finding, <u>within 12 months of receiving a petition that has received a positive 90-day finding</u>, as to whether a species warrants listing." Notice of Intent at 2 (emphasis added); accord Compl. ¶ 16 ("Once a 'positive' 90 day finding is made, the Secretary has 12 months from the date the petition was received to make [a 12-month finding]."). Put another way, before any 90-day findings have been issued, FWS is incapable of violating any of its 12-month deadlines. Had all thirty-nine 90-day findings turned out to be negative, no 12-month findings would have ever been due.

Critically, on August 16, 2013, it was simply impossible for FWS to know when, if ever, it would violate the ESA's 12-month deadline. FWS's notice, then, failed to serve the purpose of the ESA's 60-day notice and delay requirement, which is to "give[] the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." Hallstrom, 493 U.S. at 29 (internal quotation marks omitted). Hence, this Court joins the others around the country that have held that "pre-violation" notice of possible future violations is insufficient to satisfy the ESA's 60-day notice requirement. See, e.g., Moden, 281 F. Supp. 2d at 1206; Kern County, 2002 WL 34236869, at *13; see also

Conservation Force, 715 F. Supp. 2d at 103-04; Friends of Animals v. Salazar, 670 F. Supp. 2d at 13.

To be sure, FOA's letter would have been sufficient to provide notice for intent to sue over FWS's failure to issue 90-day findings. But "[a] notice of intent to sue for the failure to issue a 90-day finding does not provide proper notice of intent to sue for the subsequent failure to issue a 12-month finding." Conservation Force, 715 F. Supp. 2d at 103-04. By the same token, it is true that all thirty-nine 90-day findings were, ultimately, positive. And because all of these findings came more than a year after the petition date, FWS immediately came to be in violation of the mandatory 12-month deadline on the day those 90-day findings were issued, see Badgley, 309 F.3d at 1175-76,[3] so dismissal on this highly technical basis may seem harsh. Perhaps it is. But in the words of the Supreme Court, "compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit." Hallstrom, 493 U.S. at 26. And "a district court may not disregard these requirements at its discretion." Id. at 31. Hence, the Court "must dismiss the action as barred by the terms of the statute." Id. at 33.[4]

One additional complexity remains. The government moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but neither party addressed the question of whether (or why) the ESA's 60-day notice requirement is properly understood as "jurisdictional." In Hallstrom, the Supreme Court did not decide the question. See 493 U.S. at 31 ("In light of our literal interpretation of the statutory requirement, we need not

---

[3] To be precise, although most courts have followed the Ninth Circuit's Badgley decision on this point, the D.C. Circuit has never addressed the question, and the Department of Justice has seemingly not acquiesced, hinting that it might take the position in a future case in the D.C. Circuit that "because a 90-day finding can be lawfully delayed beyond 90 days where issuance is not 'practicable,' a 12-month finding might lawfully issue more than 12 months" after the petition's filing date. See Defs.' Reply [ECF No. 20] at 20 n.6 (citing 16 U.S.C. § 1533(b)(3)(A)). But this question is not presented here, so the Court need not discuss it further.

[4] Of course, now that FWS has made all thirty-nine positive 90-day findings, "nothing prevents plaintiffs, after ensuring that they have provided proper statutory notice . . . , from filing an additional suit to compel the 12-month finding[s]." Conservation Force, 715 F. Supp. 2d at 104 n.5.

determine whether [the notice and delay provision] is jurisdictional in the strict sense of the term."). And the D.C. Circuit has apparently not weighed in on the issue. But the vast majority of lower courts—including this one—have assumed the requirement to be a limitation on the court's jurisdiction. See, e.g., Biological Diversity, 143 F.3d at 520 ("This sixty-day notice requirement is jurisdictional."); Conservation Force, 715 F. Supp. 2d at 102 ("This requirement is mandatory and jurisdictional.") (internal quotation marks omitted); Research Air, 2006 WL 508341, at *10 (same); Common Sense Salmon, 329 F. Supp. 2d at 104 (same).

Those decisions—though often thin on explanation—have occasionally relied on rhetorical hints from Hallstrom itself, as well as the statute's text, which focuses on what sort of "action[s] may be commenced." 16 U.S.C. § 1540 (g)(C). But virtually all of those cases came before commencement of the Supreme Court's recent (and ongoing) project to clarify the precise "distinction between jurisdictional conditions and claim-processing rules." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161 (2010); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 511-15 (2006) (criticizing the "drive-by jurisdictional rulings" of the past, and holding that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character"). For that reason, their precedential value is somewhat diminished.

In any event, the issue is purely academic in this case: under Hallstrom, dismissal is mandatory, however characterized. For this reason, the Court will dismiss plaintiff's complaint for failure to comply with the ESA's 60-day notice requirement. The difficult question of whether such a dismissal is properly characterized in jurisdictional terms or, instead, as a failure to state a claim, need not be decided today.[5]

---

[5] Even if the ESA's 60-day notice requirement is not jurisdictional, it is still permissible for the Court to dismiss this case for lack of proper notice—an easily resolved, threshold, nonmerits issue—without deciding the

15

## **CONCLUSION**

For the reasons set forth above, FWS's motion to dismiss will be granted, and FOA's complaint will be dismissed. A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: June 23, 2014

---

(thorny) question of Article III standing, even though standing is undoubtedly a limitation on the Court's subject-matter jurisdiction. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted).